[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE REQUEST FOR RECONSIDERATION OR CLARIFICATION OF DENIAL OF MOTION FOR SUMMARY JUDGMENT (#214)
In the above matter the plaintiff, an investor in securities, seeks damages from the defendant corporation, who is a stockbroker, and the individual defendant, an account representative employed by the defendant corporation.
The matter came before the court at the Short Calendar of February 1991, on the defendant's Motion for Summary Judgment, which the court denied (Memorandum of Decision, #213), on the basis that under the statute sued upon [Section 36-498(a)(2), C.G. S.] the plaintiff had a cause of action for rescission of the identified sales of stock. Thereafter, the defendants filed this motion alleging that the court was in error in so ruling because the relevant holdings had been sold and rescission was not a viable remedy. The court agrees and vacates its previous decision denying the defendant's motion and granting the request of the defendants to reconsider its decision on the motion for summary judgment.
 I
Previous Proceedings
This matter was commenced on June 2, 1986, by Lillian M. Mennillo and Joseph S. Mennillo, Jr. both of Woodbridge. Connecticut, against Tucker, Anthony and R.L. Day, Inc. (corporate Defendant) and Ralph Perrotti of Hamden (individual defendant). (The plaintiff Joseph S. Mennillo, Jr., has withdrawn his complaint. Lillian M. Mennillo will be referred to as "plaintiff.")
The original complaint was filed in two counts. The first count alleged that the plaintiff was a customer of the corporate defendant from March 1983 to December 1985, and that the individual defendant undertook to represent plaintiff in her investments; that both defendants represented themselves as qualified to undertake a suitable investment program for the plaintiff, and did so undertake; that the defendants failed to act in accordance with such representation and the plaintiff is damaged. The second count alleges the defendants to have had a fiduciary obligation to the plaintiff as a customer, which they breached by incompetent management, inappropriate stock CT Page 4534 selections, violation of rules of dealers' associations and churning.
The defendants removed the case to the U.S. District Court, but said court remanded the matter to this court; on the ground that ". . . the plaintiffs have chosen to bring their claim under Connecticut common law" [Ruling on Motion to Remand, Nov. 13, 1986, Civil No. N-86-2234 (AHN)].
On January 26, 1987, the complaint was amended by adding a new count (three) alleging that the practices listed in counts one and two constituted fraud and deceit in violation of Section 36-472, C.G.S.
On January 19, 1988, the plaintiff filed a revised amended complaint, which added specifics to the claim of breach of undertaking in count one and to the claim of breach of fiduciary duty in count 2.
On February 9, 1988, the defendants filed a motion to strike for failure to state a claim upon which relief may be granted. See Memorandum of Decision (#145), (Stanley, J.). The decision noted that the plaintiff represented the claim in count one was based upon misrepresentation. The court then granted the motion to strike as to count one (misrepresentation) and as to count three (fraud and deceit). The motion was denied as to count two (breach of fiduciary relationship).
On July 13, 1988, the plaintiff filed a "Substitute Complaint" again alleging misrepresentation in count one, breach of fiduciary relationship in count two and a claim for damages under the Uniform Securities act, as to the remedies under Section 36-498(a), C.G.S.
Thereafter, the defendants filed a request to revise, and the plaintiffs filed a "Complaint" on March 22, 1989, sounding in the same three causes of action. The defendants then filed another request to revise, requesting that the court order the plaintiff to revise its complaint by deleting the allegations ordered deleted by the court. (#157). This request was granted (Ripley, J.).
On September 19, 1989, the plaintiff filed another "Complaint," apparently in response to Judge Ripley's order. On October 6, 1989, the defendants filed a motion to strike (#176). The motion alleged that counts one and three failed to state a claim upon which relief could be granted in that:
(a) Count one (misrepresentation) fails to allege that any representations made were false and known to be false. CT Page 4535
(b) Count one fails to allege that any representations were made for the purpose of inducing plaintiff to act.
(c) Count one fails to allege actionable misrepresentation and/or is barred by the period of limitations (Sec. 52-577, C.G.S.).
(d) Count three is barred by the statute of limitations in 36-498, C.G.S.).
On October 26, 1989, the plaintiff filed a motion to exempt the case from the dormancy program. In a memorandum of decision dated November 22, 1989 (#181), the court, Gaffney, J., denied the motion noting that "the case has been on the docket for an unduly protracted period" and and that the plaintiff had been granted four previous exemptions.
The court (Gaffney, J.) entered a memorandum of decision on the motion to strike on December 8, 1989, reflecting the agreement of the parties. (#183). Counts one and three were ordered stricken; count one because of failure to allege an action for fraud or misrepresentation; and count three by the statute of limitations. The court granted leave to the plaintiff to file a substitute complaint restating count two (Breach of Fiduciary Duty) and re-asserting count three (Buyer's Remedies under 36-498, C.G.S). The plaintiff was barred from repleading any action based upon misrepresentation. The plaintiff then filed an "Amended Complaint" on December 8, 1989 (#189). The first count thereon claims a breach of fiduciary relationship by way of (a) incompetent management; (b) unnecessary risks in investments; and (c) violation of rules of dealers' associations. The alleged wrongdoing was stated to be concerned with certain stocks identified in the complaint. Count two alleged that the defendants were "sellers" of certain identified securities, and, as such, were liable under 36-498a, C.G.S. The stocks identified involved some 75 trades.
On December 8, 1989, the defendants filed an answer with special defenses. (#185).
It should be noted that the plaintiff in 11 of count one alleges that the standards of the industry; i.e., rules established by the New York Stock Exchange and the National Association of Securities Dealers fix certain responsibilities on the defendant with respect to dealing with the plaintiff; e.g., selection of suitable investments. The defendants deny that such rules can form a basis for any claim outside of proceedings before such organizations. The defendants also denied they were obligated to manage the portfolio of the plaintiff. CT Page 4536
By way of special defense, as to both counts, the defendants pled the statute of limitations, to wit: 52-577 and52-584, C.G.S.; denial of guarantee of appreciation in value; contributory negligence; failure of plaintiff to follow advice of defendants; failure of plaintiff to mitigate damages; acceptance of risk; estoppel; ratification; laches; setoff; accord and satisfaction; assumption of risk; payment and release.
As to count two, the defendants also pled the statute of limitations in 36-498, C.G.S; knowledge on part of plaintiff of the dealings; and failure to use due diligence.
On December 8, 1989, the plaintiff filed a reply (#186) denying all of the special defenses. On April 2, 1990, the defendants filed the instant motion for summary judgment (#202.5), seeking summary judgment on count two on the grounds that any claims based upon the transactions alleged therein were barred by the statute of limitations contained in Sec. 36-498, C.G.S.; or were profitable and cannot provide a basis for relief.
On June 18, 1990, the plaintiff filed an amended reply to the special defense (#208). In such reply, the plaintiff amended her reply to the First Special Defense as to count one by denying the barring due to the statute of limitations because
(1) The plaintiff and defendant had a continuing course of conduct.
(2) The cause arose out of simple contract, with a six-year statute of limitations.
(3) the defendant fraudulently concealed the cause of action.
The foregoing amendment was re-alleged as to count two (i.e., as to the suit on the Connecticut Uniform Securities Act), with respect to the First Special Defense.
The plaintiff also amended its reply to the Fifteenth Special Defense by re-alleging the same amendment as to the First Special Defense to count one (1-3). Thereafter, the plaintiff alleges:
"4. The said statute of limitations is tolled by the equitable rule tolling the commencement of the limitations period until the date of discovery of the cause of action." Paragraph 5 of said reply to the Fifteenth Special Defense sets forth the alleged fraud carried out by the defendants. CT Page 4537
The plaintiff also amended her reply to the Seventeenth Special Defense by alleging:
(1) The plaintiff was not required to use due diligence because she was protected by the anti-fraud provisions of the Connecticut Securities Act; and
(2) The plaintiff exercised due diligence by inquiring as to the meaning of the term "making a market."
On June 17, 1990, the suit was withdrawn as to Joseph Mennillo.
It should be noted that the amendment to the reply was allowed by order of the court (Gaffney J.) on June 8, 1990 (#207), to wit:
"If the plaintiffs wish to raise the issue of fraudulent concealment as a defense to one or more of the defendants' special defenses, they are permitted to do so . . . ."
In their Supplemental Brief (#211) filed November 26, 1990, the defendants argue that other matters were injected other than the defense of fraudulent concealment: pled in 5 in opposition to the Fifteenth Special Defense to the Second Count. Specifically, as to count one, the reply denies the bar of any statute of limitations, as noted supra.
Since count two is based upon an alleged violation of the statute (Sec. 36-498), i.e., the concept of "a continuing course of wrongful conduct" is inapplicable because the action is based upon the sale of a security. In any event, both such allegations as well as pleading the simple contract statute will be disregarded as being beyond the scope of the permission in the order. See 176, Conn. Prac. Bk.
 II
The Motion for Summary Judgment
The instant motion (#202.50) is stated in three paragraphs. As noted by the court's earlier decision, the first two matters are resolved and not in the case; i.e., as to whether the individual defendant was a seller of securities and whether the defendant Joseph Mennillo was a purchaser of securities.
The issue before the court is whether claims based upon certain transactions identified in a schedule to the complaint are barred by the statute of limitations contained in Section 36-498 (a)(2); and whether certain others were barred because they CT Page 4538 were profitable and no damages may be awarded pursuant to said statute.
With respect to the first category, it is noted that motion to strike all such causes of action was sustained by agreement of the parties. (#183, Gaffney, J.). The motion to strike addressed the complaint dated September 18, 1989 (#175), and was filed October 6, 1989 (#176). In their memorandum of support (#177), defendant urge that count three be found to be barred by the statute of limitations contained in the Uniform Securities Act.
Count three is based upon the statutory cause of action contained in 36-498, C.G.S. 12 of count three refers to eight securities, to wit: Hartford National Corporation, Syntrex, Pegasus Gold, New Brunswick Scientific, Gulf Nuclear Syntrex [sic], Datavision and Allied Nursing Care. The specific allegations were that the defendants made a market as to such securities (12). However, count three incorporated by reference Paragraph 11 of count one which alleges false representations as to all securities listed in Schedule A to the complaint. There are 73 security trades listed in Schedule A, including all of the foregoing named securities. Schedule A lists the purchase and sale dates of each security. In their brief, the defendants argue that any action based upon any such security is barred by subsection (f) of Section 36-498: "No person may sue under this section more than two years after the contract of sale." As noted supra, the court granted the motion to strike count three in its entirety, (Gaffney, J.) (#183), as being barred by the statute of limitations. Included in Schedule A were two trades in Minnetonka (3/85 and 10/85).
In the amended complaint dated December 5, 1989 (#184), the plaintiff repleads Schedule A with the addition of a new security: to wit, Quotron (4/85). The court notes that, since this action was commenced June 2, 1986, any sale prior to June 1, 1984, would be barred by application of the statute. Apparently, the defendants do not deem the Minnetonka trades to have been barred by Judge Gaffney's decision. In their brief, they state (p. 2, Brief of 4/2/90) that "[T]he two securities purchases in count two which were within the period of limitations were profitable for plaintiff . . . ."
The new paragraph (19) of the Amended Complaint of December 5, 1989 (184) recites that the defendants made a market in the following securities: Hartford National Corporation, Syntrex, Pegasus Gold Censor, Excalibur, Guilford, New Brunswick Scientific, Info Display, Gulf Nuclear, Digital Switch, Datavision, Allied Nursing Care, Minnetonka and Quotron. All except Minnetonka and Quotron were barred by the statute of CT Page 4539 limitations per Judge Gaffney's decision. The defendants claim that they are still barred and that a profit was made in Minnetonka and Quotron, barring any relief in their trades.
 III
Are the foregoing identified securities, Hartford National Corporation, et al., barred by the statute of limitations in 36-498?
It would appear such claims are barred unless relieved by some principle of law not previously raised. The effect of the sustaining of the previous motion to strike was to allow the plaintiff to raise such claims as may be still viable because of the tolling of the statute of limitations.
As to the Fifteenth Special Defense, the plaintiff has pled (in accordance with the limitations permitted by Judge Gaffney; i.e., fraudulent concealment only) that the defendants fraudulently concealed the cause of action,
a. by failing to disclose the non-suitability of the securities purchased (repetition of Reply to First Special Defense to Count One.)
b. by representing to the plaintiff that it was purchasing the securities sold to the plaintiff from third parties, when such securities were sold from its own account because it made a market in such security.
The plaintiff also pleads in 4 of its reply to the Fifteenth Special Defense that the "statute of limitations is tolled by the equitable rule."
The defense of fraudulent concealment as a means of tolling a statute of limitations must be specially pleaded. Rosenblatt v. Berman, 143 Conn. 31, 40; Beckenstein v. Potter 
Carrier, Inc., 191 Conn. 150, 163. These cases hold that such statute must be specially pleaded. The plaintiff has not done so nor has it cited the statute as required by 409A of the Practice Book. However, the court will deem the defenses properly raised for pleading purposes by 5 of the Amended Reply to the Fifteenth Special Defense.
4 thereof refers to the "equitable rule" of tolling. Such a claim is not recognized in actions in state courts under state claims. "Plaintiff's sixth through twelfth causes of action are based upon state law claims. Federal equitable tolling principles are not applicable to those causes of action. (Emphasis added.) Connecticut law contains its own principles for CT Page 4540 tolling statutes of limitations and thus governs as to state law claims. Connecticut's tolling provision is set out in Conn. Gen. Stat. 52-595:
 If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence.
This tolling provision is applicable to section 36-498(e)'s two-year statute of limitations for securities fraud." Clute v. Davenport, 584 F. Sup. 1562, 1579 (1984). (Blumenfeld, J.)
Our Supreme Court has recently addressed the issue as to whether a defense of the statute of limitations can withstand a claim of tolling by fraudulent concealment. See Connell v. Colwell, 214 Conn. 242 (1990). In that case the plaintiff sought to recover damages from a urologist for a claim arising out of her husband's death from prostate cancer.
After the pleadings were closed, the defendant moved for summary judgment, citing the provisions of Section 52-584, the three-year statute of repose.
 "`Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."' Zichichi v. Middlesex Memorial Hospital, 204 Conn. 399, 402, 528 A.2d 805
(1987). `Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434, 429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. Practice Book 380, 381; Burns v. Hartford Hospital, [192 Conn. 451, 455, 472 A.2d 1257 (1984)]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to CT Page 4541 the nonmoving party. Town Bank Trust Co. v. Benson, 176 Conn. 304, 309, 407 A.2d 971 (1978).' Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984). `The test is whether a party would be entitled to a directed verdict on the same facts.' Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982). pp. 246, 247.
 "`To establish that the [defendant] had fraudulently concealed the existence of [her] cause of action and so had tolled the statute of limitations, the [plaintiff] had the burden of proving that the [defendant was] aware of the facts necessary to establish this cause of action . . . and that [he] had intentionally concealed those facts from the [plaintiff].' Bound Brook Assn. v. Norwalk, 198 Conn. 660, 665, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct 81, 93 L.Ed.2d 36 (1986). While we continue to adhere to the general principle `that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions'; United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 376, 260 A.2d 596 (1969); Town Bank 
Trust Co. v. Benson, 176 Conn. 304, 309, 407 A.2d 971 (1978); it remains, nevertheless, incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists. Multi-Service Contractors, Inc. v. Vernon, 193 Conn. 446, 452, 477 A.2d 653 (1984). In this case, the plaintiff has simply failed to establish any such factual predicate concerning the defendant's alleged fraudulent concealment." pp. 250-251.
As in the Federal cases (see Long v. Abbott Mortgage Corp.,459 F. Sup. 108, 113), the plaintiff herein has the burden of proving that the defendant was aware of the facts necessary to establish the cause of action and that the defendant intentionally concealed those facts from the plaintiff.
As noted supra, the Amended Reply of the plaintiff not only contains material pled in violation of Judge Gaffney's order; it does not set forth clearly the statute relied upon nor the facts upon which he relies to defeat the limitations. Accordingly, the court will review the plaintiff's Memorandum of CT Page 4542 Summary Judgment in an effort to determine what facts she claims to be in support of her position.
In her memorandum (#205), she asserts on page 3, "3. Count Two is not barred by the statute of limitations." Curiously, the plaintiff cites only two cases in the issue of tolling, both of which are U.S. District Court cases, Clute v. Davenport, 584 F. Sup. 1562 (1984); and Long v. Abbott Mortgage Co., 424 F. Sup. 1095. She also cites two other cases — one from Indiana and one from South Carolina. She concludes: "Here plaintiffs have pled concealment, misrepresentation, omissions and have provided an affidavit substantiating the claims in the complaint. Nothing more is required." p. 7.
From the plaintiff's affidavit, the following appears:
1. That the defendant failed to disclose that she might be buying securities which the corporate defendant had invested in or which it bought as an underwriter.
But there is no fact disclosed as to which stocks, if any, referred to in count two were in this category.
2. That the individual defendant failed to disclose the risk of new issues in which the corporate defendant "no longer wanted in its portfolio."
Again, not only is no such stock identified, but there is no evidence offered as to whether the defendant sold stocks it "no longer wanted in its portfolio."
3. That she inquired as to what the term "making a market" meant, that the individual misrepresented the meaning to her, and she did not learn what it meant until she hired legal counsel in 1986.
With respect to the first two categories, no securities are identified, nor is there any statement that the plaintiff suffered a loss as a result of the purchase of such securities. There is simply no evidence offered in support of the claim of fraudulent concealment. Bartha v. Waterbury House Wrecking Co.,190 Conn. 8, 12.
This leaves the "making a market" issue which appears to be the central matter of count two. Before addressing this issuer it is necessary to look at the statutory cause of action alleged to have been fraudulently concealed. In order to maintain an action under Section 36-498(a)(2), the plaintiff must establish that the defendant either made an "untrue statement of a material fact" or "omitted to state a material fact . . .". This statute CT Page 4543 incorporates the language of Section 36-472(2), which prohibits the foregoing conduct. In Merrill, Lynch, Pierce, Fenner Smith, Inc. v. Cole, 189 Conn. 518, our Supreme Court noted that the predecessor to Section 36-472 (Section 36-338, Gen. Statutes, Rev. to 1975) was modeled after 10(b) of the Securities Act of 1934 and 17(a) of the Securities Act of 1933, decisions under which would provide guidance. p. 535.
 "We begin with an analysis of the relationship between a broker-dealer and his customer. As a broker he acts as an agent with all of the responsibility to his customer that such status implies. But even when, as a dealer in his own securities, he acts as a principal in relation to his customer he is not free to operate under the principle of caveat venditor. `Inherent in the relationship between a dealer and his customer is the vital representation that the customer will be dealt with fairly, and in accordance with the standards of the profession.' Duker Duker, 6 S.E.C. 386, 388 (1939). `The theory is that even a dealer at arm's length impliedly represents when he hangs out his shingle that he will deal fairly with the public.' 3 Loss, Securities Regulation (2d Ed. 1961) p. 1483. The `shingle' theory, first recognized by the federal courts in the case of Charles Hughes Co., Inc. v. S.E.C., 139 F.2d 434, 435-36 (2d Cir. 1943), cert. denied, 321 U.S. 786, 64 S.Ct. 781, 88 L.Ed. 1077 (1944), has become a well established doctrine in the securities field. Loss. op. cit., 1487. See S.E.C. v. Capital Gains Bureau, 375 U.S. 180, 186, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963)." pp. 517-518.
The Merrill case, as the instant matter, involved the issue of "making a market."
 "Making a market has been defined as: `A term particularly applicable to the over-the-counter market, indicating those firms, maintaining markets in particular issues, i.e., standing ready to quote firm quotations (bid and asked) to buy and sell. This usually involves maintaining a "position" (inventory) on the issue concerned.' Munn, Encyclopedia of Banking and Finance (7th Ed.).
"Also, in Davids, Dictionary of Banking and CT Page 4544 Finance, the term is defined as follows: `3. Action of a dealer in the over-the-counter market in acquiring an inventory in a new issue security whereby he stands ready to buy and sell for his own account. His profit is then made from the "spread," or difference in what he pays for the security and what he can sell it for.'" pp. 521-522, n. 1.
In the Merrill case, the defendant claimed that the plaintiff sold short shares in a certain security at a price higher than it was purchasing shares from the defendant, without disclosing such short sale to the defendant. Although the facts were found otherwise, the Supreme Court noted that the defendant had a duty to disclose such transaction and its failure to do so will bar any claim by the plaintiff against the defendant under 36-346(8) (Now. Sec. 36-498g).
The so-called "shingle" rule requires a dealer to deal fairly with his customer, and in accordance with the standards of the profession. Hence, a failure on the part of a broker to disclose to a customer that it made a market in the securities being traded was deemed to be a failure to disclose a material fact under S.E.C. rule 10(b). Chasins v. Smith, Barney Co.,438 F.2d 1167 17 C.F.R. § 240.10b-10(a)(1) requires a broker or dealer to disclose the capacity in which he is acting when making a sale of a security.
Subparagraph (8)(B)(ii) of the regulation requires the broker or dealer to disclose, if he is acting as principal for his own account, "[I]n the case of a transaction in an equity security, whether he is a market maker in that security (other than by reason of his acting as a block positioner in that security)."
The sole claim made in accordance of the statute of limitations is that the plaintiff did not really understand what "making a market really meant" until she consulted an attorney in 1986. See 9. Plaintiff's affidavit in opposition to motion for summary judgment.
From this, it appears to the court that the failure to explain such meaning is claimed as both the cause of action, as well as the basis of tolling the statute. On the latter point, the plaintiff would have the burden of establishing that such action by the individual defendant was taken "with the intent necessary to constitute fraudulent concealment." Connell, supra, p. 251. In order to invoke the tolling statute, the plaintiff has the burden to establish that "the defendant's conduct or representations were directed to the very point of obtaining the CT Page 4545 delay of which he afterward seeks to take advantage by pleading the statute." Lippitt v. Ashley, 89 Conn. 451, 480. In short, the plaintiff would have the court believe that whatever the individual defendant said about making a market, his intent was to delay her from bringing suit on the particular trade for two years thereafter.
The following excerpt from the second deposition of the plaintiff is enlightening as to what exactly was said between the plaintiff and the individual defendant.
 "Q. Well, whatever it says, it says. We have copies we can look at later. A. Yes. It was on the confirmation slip; and I asked Ralph what that meant, and he says, "Oh, that means Tucker Anthony makes a market in that stock," and that's all he said to me. Q. And did you understand what he meant when he gave you that explanation? A. No. Q. Well, why didn't you ask him to explain that if you didn't understand it? A. I just asked him what it meant. He says that it meant that Tucker Anthony made a market in it: they bought stocks in it. So I felt if Tucker Anthony is buying the stocks, it must be a good stock, too. I don't know. I didn't question him on his definition. Q. Whatever the exact words he told you were, when he told you what that phrase "making a market" on the confirmation slip meant, you were satisfied with his explanation? A. Yes. Q. Did you ask him to tell you more about it? A. No. Q. Did you tell him that you were confused or that his explanation was not sufficient? A. No. Q. Did you tell him that you didn't understand the explanation? A. No. I trusted Ralph. I didn't."
(Plaintiff's Deposition, 1/29/90, pp. 58-59.)
The defendants also offered in support of their motion portions of a deposition of the plaintiff's expert witness, Robert J. Bondi (Dep. 1/17/90).
"Q. But insofar as the transmittal and confirmation CT Page 4546 sheets above are concerned, the disclosure here by Tucker Anthony is clear, isn't it?
A. It appears to be — yes.
Q. And to the best of your knowledge it is in compliance with the custom and practice in the securities industry as to the confirmation slips?
A. Yes.
* * *
Q. Doctor; I'm going to hand you a Tucker Anthony statement to Mrs. Lillian M. Mennillo for the period ending 12/31/85, and I note that midway down the description column, there appears to be some asterisks and a pen circle drawn around a statement. I'm handing that to you now.
A. That's my handwriting.
Q. Would you read the statement that is circled?
A. Sure. It says 1500 shares were sold in Minnetonka, Inc. and the underlined section said `[W]e made a market in this security.'
* * *
Q. Doctor, with regard to the disclosure contained in the statement which I have identified and that is circled, did you have any problem in understanding what that meant?
A. No. I interpreted that to mean exactly what it said."
It is of some significance that this trade — with the market making notations — took place just a few months prior to the commencement of this suit. From the pleadings of the plaintiff, there were eleven other securities traded in which the corporate defendant made a market and concerning which the plaintiff never complained.
It is of further significance that the claim under the statute was not pled in the original complaint since June 2, 1986. The claim of concealment of the meaning of market maker does not appear — as a cause of action under the statute until December 5, 1989, in the fourth amended complaint, and almost four years after the last trade confirmation bearing the market maker designation. CT Page 4547
Finally, a review of the entire matters offered by the plaintiff in opposition to the motion for summary judgment fails to disclose when the alleged conversation between the plaintiff and the individual defendant took place. The Minnetonka trade occurred on December 31, 1985. For all that appears, the conversation may have taken place at any time between the first trade with the market maker noted and the commencement of suit. If such conversation — alleged to be the act of fraudulent concealment — took place after the statute of limitations had run on the trades in question, obviously, the plaintiff had the burden to prove — not only the existence of such facts — but the time thereof.
In her disposition of January 29, 1990, the plaintiff was asked:
"Q. When did you first ask him about this phrase "making a market in the security'?
A. I don't remember when I asked."
As noted supra, in Chasins v. Smith Barney Co.,438 F.2d 1167 (1972), the Second Circuit held that a securities broker must disclose to its customers when it recommends a stock in which it is a market maker. The court noted:
"[D]isclosure of the fact would indicate the possibility of adverse interests which might be reflected in [the] recommendations . . . . An investor who is at least informed of the possibility of such adverse interest, due to his broker's market making in the securities recommended, can question the reasons for the recommendations. The investor . . . must be permitted to evaluate overlapping motivations through appropriate disclosures, especially where one motivation is self interest." Id., p. 1172.
Subsequent cases in the U.S. District Courts have addressed the issue of disclosure of making a market and the meaning thereof. In Parsons v. Hornblower Weeks — Hemphill and Noyes, 447 F. Sup. 482 (1977), the court held a disclosure of market maker status by confirmation slips, as in the instant case, was sufficient to comply with the pertinent S.E.C. rule.
In Jaksich v. S. Thomson McKinnon Securities, Inc., et al., 582 F. Sup. 485 (1984), the court found that showing the status of market maker on monthly account statements "was enough to alert plaintiff of Thomson's market maker status." p. 494.
In Pross v. Baird, Patrick Co., Inc., 585 F. Sup. 1456
(1984), the defendant demonstrated that its confirmation slips and monthly statements stated "we make a market in this CT Page 4548 security". The court noted, "So long as a broker adequately discloses its status to a customer, `it is not a fraudulent practice for a brokerage firm to act as a market-maker and to sell securities to its customer as a principal.'" p. 1459, citing In Re Scientific Control Corp., Sec. Lit., 71 FRD 491, 508 (S.D.N Y 1976). The court found that there was no factual basis for concluding that the defendant failed adequately to disclose that it was making a market in the stock.
However, in Shivangi v. Dean, Witter Reynolds, Inc., et al., 107 FRD, 313 (1985), aff. 825 F.2d 885, the District Court found that where the defendant was aggressively marketing a certain stock, so that an account executive would earn extra compensation, above the normal commission, the existence of such an arrangement must be disclosed to the buyer, in addition to the confirmation slip notation. The court cited Chasins, as well as Affiliated Ute Citizens of Utah v. U.S., 406 U.S. 128 (1972). In the latter case, a bank was involved in selling a certain stock to citizens of mixed blood, and also acquired shares for the purpose of selling to non-Indians, for profit. The U.S. Supreme Court held the bank had an affirmative duty under Rule 10b-5 to disclose to the mixed blood sellers that (1) it was a market maker and (2) that it was in a position to gain financially from the sales;925 S.Ct. at 1472.
In the instant case, the plaintiff makes no allegations of any adverse interest in the trading of the stocks in which the corporate defendant made a market. The sole exercise of the opportunity to inquire provided by the regulation (cf. Chasins, p. 1172) was a casual phone call concerning an unidentified stock, for which the confirmation slip identified the market maker status. The plaintiff has alleged no conduct on the part of the defendants that would require the additional disclosure of such cases as Affiliated Ute Citizens and Shivangi.
In summary, it is undisputed that, with the exception of the Minnetonka and Quotron trades, all of the trades of securities in which the corporate defendant made a market were beyond the statute of limitations set forth in Section 36-498, C.G.S. In each such case, the plaintiff was informed of such fact by the confirmation slip. Her own witness admits the notice on the confirmation slip was in compliance with the pertinent rule. The plaintiff has identified no facts that would warrant disclosure further than that of the confirmation slip. The information relayed to the plaintiff by the individual defendant, to the effect that the notations meant that the corporate defendant brought such stocks for its own account is within the definition of "market maker" cited by our Supreme Court. Cf. Merrill Lynch, supra, p. 521, n. 1. Further, the plaintiff has produced no evidential facts to challenge the truth of the statement of the CT Page 4549 individual defendant.
Accordingly, this court cannot discern what the plaintiff deems to be a cause of action, based upon the existence of the market maker status.
Since the plaintiff has not established a cause of action, she has failed in carrying her "burden of proving that the [defendant was] aware of the facts necessary to establish this cause of action." Bound Brook v. Norwalk, cited in Connell, supra, p. 250.
The plaintiff had the obligation, on this issue, of showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. Connell, supra, p. 246. The plaintiff has produced no evidence to support a Rule 10-b claim, let alone that any defendant was aware of any facts that would establish such a claim, or that any defendant intentionally concealed such facts from the plaintiff. Connell, supra, p. 250. The Connell case also cites Puro v. Henry, 188 Conn. 301-308, to the effect that fraud is not to be presumed, and the evidence must be clear, precise and inequivocal. The plaintiff has failed to establish any factual predicate concerning the alleged fraudulent concealment.
Accordingly, the plaintiff's claim of tolling of the statute of limitations in Section 36-498 must fail, and all such claims previously admitted as being barred by the statute are barred by this decision. Because the limitation is on the right of action, and not in the remedy, the statute requires strict compliance. DeMartino v. Siemm, 90 Conn. 527, 529.
 V
As to the claims relative to the Minnetonka and Quotron trades, the printout attached as Exhibit 2 to the deposition of Dr. Bondi on January 17, 1990, shows two trades in Minnetonka.
 (1) 1500 shares bought at a cost of 8875 on 3/88 and sold on 4/85 for 11000 at a profit of 2125.
 (2) 1500 shares bought on 10/85 (no price given) and sold 12/85 at a profit of 2487.50.
 Quotron was purchased in 4/85 and sold 10/85 for a profit of 2250.
In all three cases, the plaintiff realized a profit. This was admitted by the plaintiff in her deposition of January 29, 1990 (pp. 111-112). CT Page 4550
It should first be noted that the plaintiff has offered no law nor evidential facts to support a cause of action under the statute 36-498 in the light of Rule 10-b. She has admitted receiving confirmation slips with the market maker notation, and has offered neither law nor facts to show this is insufficient. Chasin stands for the proposition that a customer cannot ignore the opportunity to explore any adverse effect of making a market. A customer is bound by the rules of the exchange even though she may not have actual knowledge. 12 Am.Jur.2d, Brokers 119.
The Connecticut Uniform Securities Act provides for damages if the plaintiff no longer owns the securities. The pertinent statute is Connecticut's version of the Uniform Securities Act. See L. Loss and E.W. Corvett, "Blue Sky Laws" (1958 Ed.). Therein, the measure of damages when the plaintiff no longer owns the securities is the equivalent of rescission. p. 390.
The Second Circuit had adopted a measure of damages for a Rule 10-b violation as the difference between the purchase price of the security and the sales price thereof. See Clark v. John Larribee Investors, Inc., 583 F.2d 594; Chasins v. Smith Barney 
Co., supra; Gordon v. Burr. 366 F. Sup. 156. The Minnesota Supreme Court has applied the same rule to a claim under its version of the Uniform Securities Act. Bond v. Charlson, ___ Minn. ___, 374 N.W.2d 423 (1985). "Failure to prove actual damages is fatal to the claim." Id. 430. VI
With respect to those claims, relating to securities, previously barred by the statute of limitations in Section 36-498, the court finds that the plaintiff has failed to raise a material question as to the tolling of the statute because of fraudulent concealment.
As to the sales of Minnetonka and Quotron, the defendants have claimed no action lies because there are no damages arising out of such claims. The court agrees.
Summary judgment may enter for the defendants in the Second Count.
BURNS, J.