MARY VIRGINIA CONNELL, ADMINISTRATRIX (ESTATE
OF VERNON CONNELL) *v.* BRADFORD COLWELL
(13724)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued December 6, 1989—decision released March 20, 1990

*David C. Shaw,* with whom were *Kimberly A. Knox*
and, on the brief, *Wesley W. Horton,* for the appellant
(plaintiff).

*Michael P. Del Sole,* with whom was *Stephen P. Sach-
ner,* for the appellee (defendant).

SHEA, J. The plaintiff, Mary Virginia Connell, administratrix of the estate of her late husband, Vernon Connell, has appealed from the judgment of the trial court granting the motion of the defendant, Bradford Colwell, a physician, for summary judgment. The trial court concluded that the plaintiff's action for the wrongful death of her husband and her own loss of consortium was barred as a matter of law by the relevant statute of limitations, General Statutes § 52-584,[1] since there was no genuine issue concerning any material fact that would have prevented its application. The plaintiff had contended, in her amended reply, that the statute of limitations had been tolled by either: (1) the defendant's fraudulent concealment of the cause of action;[2] or (2) the defendant's breach of a continuing duty to disclose material facts to the plaintiff and her decedent.

The trial court summarized the following undisputed facts taken from the pleadings and affidavits submitted in conjunction with the defendant's motion for summary judgment. The defendant examined the plaintiff's decedent in 1970 and 1972, and on a yearly basis from 1974 through 1982.[3] The examinations were due, at

[1] General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[2] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

[3] The dates of these examinations were April 11, 1970, February 5, 1972, January 19, 1974, March 15, 1975, April 17, 1976, April 15, 1977, May 26, 1978, April 20, 1979, April 28, 1980, May 21, 1981 and August 27, 1982.

least in part, to a concern over a history of prostate cancer in the decedent's family. After the examination in 1976, the defendant noted in the decedent's record: "Watch prostate - ? early consult," and, after the subsequent examinations, also noted an enlargement of the decedent's prostate. Following the August, 1982 examination, the defendant recommended to the plaintiff and the decedent that, because the decedent had difficulty urinating, he should consult a urologist. On December 2, 1982, the consulting urologist requested that an immediate biopsy be performed on the decedent's prostate. The biopsy revealed well differentiated cancer, for which the decedent underwent radiation therapy. The cancer eventually caused the decedent's death, on June 27, 1986.

On the basis of these facts, assuming as true the allegation that the defendant had failed to disclose any abnormalities, the trial court concluded that the plaintiff or the decedent either discovered or should have discovered an actionable harm in December, 1982, at the time the decedent was diagnosed as having cancer. Noting that the present action was not commenced until May, 1987, the trial court concluded that the action was barred under either the two year limitation or the three year repose portion of § 52-584. Regarding the plaintiff's claim that the statute had been tolled, the trial court concluded: (1) "that the decedent knew, or by the exercise of reasonable diligence could have known of his rights" in December, 1982; (2) that there was "nothing in the record to indicate that [the decedent] was put off any course of inquiry subsequent to that time"; and (3) even if the defendant had a continuing duty to disclose his findings up until the time of the decedent's death, reasonable diligence on the part of the plaintiff or the decedent would have resulted in the discovery of a cause of action against the defendant in December, 1982, when the decedent's cancer was

first diagnosed. Accordingly, the trial court granted the defendant's motion for summary judgment.

On appeal the plaintiff argues that the trial court erred by failing to conclude that the applicable statute of limitations had been tolled by either the defendant's fraudulent concealment or his continuing failure to disclose material facts. We conclude that the defendant's motion for summary judgment was properly granted, albeit for reasons partially divergent from the conclusions reached by the trial court. See *Bernstein* v. *Nemeyer,* 213 Conn. 665, 669, 570 A.2d 164 (1990); *Aetna Casualty & Surety Co.* v. *Murphy,* 206 Conn. 409, 420, 538 A.2d 219 (1988); *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978).

I

In support of her first claim of error the plaintiff advances two arguments. First, that whether the defendant fraudulently concealed her cause of action was a genuine issue of material fact that could be resolved only by a trial. Second, that the trial court erred in applying a "reasonable diligence" standard of discovery to the terms of General Statutes § 52-595. The defendant counters these arguments by asserting: (1) that the defendant made no misrepresentations to the decedent, the person entitled to bring the cause of action; (2) that the record does not support any claim that the changes in the decedent's prostate were concealed from him; (3) that the record does not contain any evidence that the defendant concealed information for the purpose of obtaining delay on the plaintiff's part in filing her lawsuit; and (4) that the alleged misrepresentations did not prevent the plaintiff from obtaining information or from pursuing her cause of action.[4] We agree with the defendant's third conten-

---

[4] The defendant also claimed, during oral argument, that the fraudulent concealment exception to the statute of limitations, contained in General

tion, disagree with the plaintiff's first and, consequently, need not address the remainder of either party's arguments.

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 provides that summary judgment 'shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 402, 528 A.2d 805 (1987). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. Practice Book §§ 380, 381; *Burns* v. *Hartford Hospital,* [192 Conn. 451, 455, 472 A.2d 1257 (1984)]. In deciding a motion for summary judgment,

Statutes § 52-595, will not save actions brought beyond the three year repose period contained in General Statutes § 52-584. The defendant was unable, however, to articulate how the language of § 52-595 was to be construed to provide the selective application he suggests. We find no merit to the defendant's argument. Section 52-595 provides that causes of action fraudulently concealed by a defendant will "*accrue* against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." (Emphasis added.) "It is clear that, when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 193, 530 A.2d 171 (1987). Since fraudulent concealment will cause an action to accrue upon the date of discovery rather than on "the date of the act or omission complained of," as specified in § 52-584, we conclude that the exception contained in § 52-595 constitutes a clear and unambiguous general exception to any statute of limitations that does not specifically preclude its application.

the trial court must view the evidence in the light most favorable to the nonmoving party. *Town Bank & Trust Co.* v. *Benson,* 176 Conn. 304, 309, 407 A.2d 971 (1978)." *Strada* v. *Connecticut Newspapers, Inc.,* 193 Conn. 313, 317, 477 A.2d 1005 (1984). "The test is whether a party would be entitled to a directed verdict on the same facts." *Batick* v. *Seymour,* 186 Conn. 632, 647, 443 A.2d 471 (1982).

The defendant, in his motion for summary judgment, relied solely on the periods of limitation contained in § 52-584. In response, the plaintiff asserted that her failure to file suit within the limits of § 52-584 was due, in part, "to the defendant's fraudulent concealment of material information from the decedent and the plaintiff [and] his false representations to the plaintiff . . . . " In support of her contentions, the plaintiff submitted several affidavits, as well as transcripts of the deposition testimony of several potential witnesses, including herself and the defendant. The bulk of the materials submitted by the plaintiff, however, related principally to the alleged malpractice of the defendant. The plaintiff thus relies solely on her own affidavit and deposition testimony as support for her contention that the defendant fraudulently concealed her cause of action.

The relevant portion of the plaintiff's affidavit asserts that after she and the decedent had been told, by the consulting urologist, that a biopsy of the decedent's prostate was in order, she made a telephone call to the defendant. During that call, the plaintiff asserted, "I asked [the defendant] . . . if there was anything in [the decedent's] medical history that would indicate the need for a biopsy. [The defendant] seemed surprised when I told him that a biopsy was recommended. After reviewing [the decedent's] records he indicated that there was nothing in [the decedent's] medical history that indicated the need for a biopsy because there had

been no change in his prostate over the years he had treated him." The plaintiff's affidavit also alleged that she had obtained her husband's medical records in July, 1986, after his death, and that "[a]fter reading those records [she] realized for the first time that [the defendant] noted on April 17, 1976, unlike in the prior years, that the right lobe of [the decedent's] prostate seemed firm and that his prostate was significantly enlarged." According to the plaintiff, she also realized, at that time, that the defendant had "lied to [her] when he told [her] on December 2, 1982 that there had been no change in the firmness of [the decedent's] prostate from 1970 through 1982."

The plaintiff in her affidavit declared that the defendant had "indicated" in their single telephone conversation that the decedent's medical history showed no need for a biopsy because there had been no change in the condition of his prostate while he was under the defendant's care. The testimony she gave at a deposition, in which she purported to narrate the telephone conversation "just about verbatim," was more limited with respect to what the defendant had actually said to her. She testified that, upon learning that the urologist had recommended a biopsy, the defendant seemed surprised. She further testified that in response to her question whether there was anything in the decedent's past history that would have indicated a need for a biopsy, the defendant replied: "I think it's always been firm . . . . Wait a minute. I have to go look on the record." After a delay of three to four minutes, the defendant, according to the plaintiff, came back to the phone and stated: "Yes, it's always been firm."[5] Appar-

---

[5] The transcript of the plaintiff's relevant deposition testimony reveals the following:

"Q. Did you speak with Dr. Colwell at any time in December of '82?

"A. Yes. After Dr. Wagshul told us that he wanted to do a biopsy, I was upset and I called up Dr. Colwell, and I said to him, and I will quote just about verbatim, 'Dr. Colwell, this is Virginia Connell. I finally got Vernon

ently this conversation is the only basis for the statement in the plaintiff's affidavit that the defendant "indicated that there was nothing in [the decedent's] medical history that indicated the need for a biopsy because there had been no change in his prostate over the years he had treated him." Her account of the conversation at the deposition, however, indicates that the defendant had informed the plaintiff only that the decedent's prostate had "always been firm," without stating whether there had been any change in the degree of firmness. If an inference of fraudulent intent by the defendant to conceal a cause of action is to be drawn, the principal basis for such an inference is that response of the defendant to the plaintiff's inquiry concerning any indication of a need for a biopsy in the decedent's medical records.

The plaintiff's affidavit asserted that after she had talked to the defendant, she asked the consulting urologist "whether the fact that Vernon's prostate had been firm, but unchanged all these years had any medical significance." The urologist, according to the affidavit, "indicated that firmness in an adult male's prostate did not necessarily indicate any abnormality or reason for referral to a specialist in urology." This opinion was substantiated by an affidavit, submitted by the plaintiff, of a physician specializing in internal medicine. The physician stated that a finding by the defendant that the decedent's "prostate was firm but

to the urologist,' and, lets see—I'm trying to be exact, that's why I'm hesitating—'I finally got Vernon to the urologist, and he wants to do a biopsy.' And Dr. Colwell responded by saying, 'He does?' with inflection in his voice. That, to me, that's surprise. 'He does?' And then I went on to say, 'Is there anything in Vernon's past history that would indicate a need for this?' He responded by saying, 'I think it's always been firm,' but he said, 'Wait a minute. I have to go look on the record.'

"Q. Did he, to the best of your knowledge?

"A. Yeah. There was a delay of about three or four minutes and he came back to the phone and said, 'Yes, it's always been firm.' "

unchanged during the many years he examined him would not have required referral to a urologist for consultation."

These facts, according to the plaintiff, presented a genuine issue of material fact, in that "the Defendant was aware in 1982 of facts necessary to establish a cause of action for his failure to diagnose or refer in 1976, 1977, 1978, 1979, 1980, and 1981, and that he concealed them for the purpose of preventing the timely initiation of this suit." Thus, the plaintiff argues, there was sufficient evidence presented to the trial court to establish that the defendant either "knew of the alleged negligence and affirmatively concealed it, or knew of the negligence and failed to disclose it." We conclude, assuming as we must the truth of these allegations, that the actions of the defendant did not constitute fraudulent concealment of the plaintiff's cause of action and, consequently, that the motion for summary judgment was properly granted.

"To establish that the [defendant] had fraudulently concealed the existence of [her] cause of action and so had tolled the statute of limitations, the [plaintiff] had the burden of proving that the [defendant was] aware of the facts necessary to establish this cause of action . . . and that [he] had intentionally concealed those facts from the [plaintiff]." *Bound Brook Assn.* v. *Norwalk,* 198 Conn. 660, 665, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986).[6]

---

[6] The plaintiff asserts that by virtue of our decision in *Logan* v. *Greenwich Hospital Assn.,* 191 Conn. 282, 465 A.2d 294 (1983), the defendant was under the same duty to disclose material facts to the decedent as a physician seeking a patient's informed consent to a surgical procedure and that the defendant's failure to make such a disclosure constituted a fraudulent concealment of the decedent's cause of action. "This court has not yet decided whether affirmative acts of concealment are always necessary to satisfy the requirements of [General Statutes] § 52-595." *Fichera* v. *Mine Hill Corporation,* 207 Conn. 204, 215, 541 A.2d 472 (1988); *Bound Brook Assn.* v. *Norwalk,* 198 Conn. 660, 665 n.10, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107

While we continue to adhere to the general principle "that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions"; *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 376, 260 A.2d 596 (1969); *Town Bank & Trust Co.* v. *Benson,* 176 Conn. 304, 309, 407 A.2d 971 (1978); it remains, nevertheless, incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists. *Multi-Service Contractors, Inc.* v. *Vernon,* 193 Conn. 446, 452, 477 A.2d 653 (1984). In this case, the plaintiff has simply failed to establish any such factual predicate concerning the defendant's alleged fraudulent concealment.

Even if it can be said that the defendant misrepresented the contents of the decedent's medical records during the December, 1982 telephone conversation with the plaintiff, there was no evidence submitted to the trial court from which it could be inferred that the defendant misrepresented those facts with the intent necessary to constitute fraudulent concealment. The actions of the defendant must be "directed to the very point of obtaining the delay of which he afterward seeks to take advantage by pleading the statute." *Lippitt* v. *Ashley,* 89 Conn. 451, 480, 94 A. 995 (1915). The plaintiff's allegations of misrepresentations, contained in her affidavit as clarified by her deposition testimony, were not sufficient to establish a genuine issue of material fact concerning the intent of the defendant. Although the defendant was deposed by the plaintiff about the

S. Ct. 81, 93 L. Ed. 2d 36 (1986). We conclude that this case is also not amenable to such a determination since it was the defendant's alleged misrepresentations, rather than his silence, that the plaintiff claims constituted the fraudulent concealment of the decedent's cause of action.

December, 1982 telephone conversation, none of his testimony provided to the trial court disclosed anything further about the content of the December, 1982 telephone conversation.[7] "Fraud is not to be presumed, but must be strictly proven. The evidence must be clear, precise, and unequivocal." *Puro* v. *Henry,* 188 Conn. 301, 308, 449 A.2d 176 (1982). On the basis of the evidence submitted, the plaintiff could not have satisfied this burden. We conclude, therefore, that the trial court correctly determined that the statute of limitations had not been tolled because of the actions of the defendant, and properly granted the defendant's motion for summary judgment.[8]

## II

The plaintiff argues next that the trial court erred in rejecting her claim that the statute of limitations had been tolled by a breach of the defendant's "continuing duty to disclose material facts" to herself and the decedent. The trial court determined, on the basis of *Puro* v. *Henry,* 32 Conn. Sup. 118, 120, 342 A.2d 65 (1975); that even if such a continuing duty existed, the "plaintiff through her decedent discovered or reasonably should have discovered any alleged malpractice when he was diagnosed with cancer in December, 1982 . . . ."

In support of her position, the plaintiff argues that the statute of limitations was tolled as a result of the

---

[7] The lone reference to the December, 1982 telephone conversation in the portion of the defendant's deposition testimony submitted to the court reveals that the defendant stated: "Okay. I have no knowledge that she, she spoke to me except when she called up after."

[8] In light of our conclusion that the plaintiff has not set forth facts sufficient to establish any fraudulent concealment on the part of the defendant, we leave for another day the question of whether the trial court correctly concluded that there is a duty imposed on a plaintiff to discover, by the exercise of reasonable diligence, a cause of action that does not accrue, by reason of fraudulent concealment, until "the person entitled to sue thereon first discovers its existence." General Statutes § 52-595.

defendant's: (1) continuing treatment of the decedent; see 61 Am. Jur. 2d, Physicians, Surgeons, Etc. § 320; (2) wrongful continuing course of conduct; see *Fichera* v. *Mine Hill Corporation,* 207 Conn. 204, 541 A.2d 472 (1988); and (3) duty to disclose material facts to his patient. See *Logan* v. *Greenwich Hospital Assn.,* 191 Conn. 282, 465 A.2d 294 (1983). The plaintiff argues that upon being informed that the consulting urologist was to perform a biopsy of the decedent's prostate, the defendant was obligated to disclose the fact that he had noted changes in the prostate during prior medical examinations, and that this obligation continued until 1986, when the plaintiff first obtained and reviewed the decedent's medical records.

This court previously addressed the doctrine of continuing treatment in *Giambozi* v. *Peters,* 127 Conn. 380, 16 A.2d 833 (1940), overruled on other grounds, *Foran* v. *Carangelo,* 153 Conn. 356, 360, 216 A.2d 638 (1966). In *Giambozi* (p. 385) we stated: "The term malpractice itself may be applied to a single act of a physician or surgeon or, again, to a course of treatment. The Statute of Limitations begins to run when the breach of duty occurs. When the injury is complete at the time of the act, the statutory period commences to run at that time. When, however, the injurious consequences arise from a course of treatment, the statute does not begin to run until the treatment is terminated." See 61 Am. Jur. 2d, supra, § 320. "The policy underlying the continuous treatment doctrine seeks to maintain the physician/patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure." *Ewing* v. *Beck,* 520 A.2d 653, 659–60 (Del. 1987).

The plaintiff's reliance upon this doctrine is, however, misplaced, since there was no indication, in the evidence submitted, that the defendant engaged in *any* activity that could be construed as *treatment* of the decedent

after the defendant's December, 1982 conversation with the plaintiff. Although the plaintiff concedes that she did not speak to the defendant between December, 1982, and June, 1986, following the decedent's death, she asserted in her affidavit that the doctor-patient relationship between the defendant and decedent had not been terminated during that time period. In opposing a motion for summary judgment, however, "[m]ere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380." *Bartha* v. *Waterbury House Wrecking Co.*, 190 Conn. 8, 12, 459 A.2d 115 (1983). The only support offered for the plaintiff's contention that the doctor-patient relationship had not terminated was her bald assertion that she and the decedent "assumed, *without knowing,* that [the defendant] was receiving regular updates on [the decedent's] treatment from the specialists and was providing information as needed to the specialists during this period." (Emphasis added.) We conclude that these assertions, unsupported by any other evidence, were not sufficient to present a material issue of fact concerning whether the defendant's "treatment" of the decedent extended beyond December, 1982. As a consequence, the plaintiff's reliance upon the doctrine of continuing treatment is without support.

We also conclude that the plaintiff could not have relied upon a theory that the defendant was engaged in a continuing course of conduct such that his failure to warn the decedent of his misdiagnosis tolled the statute of limitations until 1986, when the plaintiff first reviewed the decedent's medical records. "To support a finding of a 'continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement

of the period allowed for bringing an action for such a wrong." *Fichera* v. *Mine Hill Corporation,* supra, 209. In such situations, however, the continuing course of conduct is not the failure of the alleged tortfeasor to notify the plaintiff of his wrongdoing. As we stated in *Fichera* v. *Mine Hill Corporation,* supra, 210, it consists, rather, of "either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act."

Drawing support from the informed consent standard set forth in *Logan* v. *Greenwich Hospital Assn.,* supra, the plaintiff asserts that when a "doctor misrepresents the facts to his patient, the doctor's obligation to warn the patient about this defective advice continues until an accurate and full disclosure is made, or the patient discovers the true state of affairs through [his] own efforts." While we continue to adhere to our holding in *Logan,* that case is simply inapplicable to the situation at hand, since any breach by the defendant of his duty to inform the decedent that he should have undergone a urological consultation in 1976, was rendered moot by the diagnosis made in 1982, that the decedent in fact had cancer of the prostate. Beyond that time "[t]here was not a failure to warn the [plaintiff or the decedent] because [she] admit[s] that they were already aware of the problem." *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 150, 162, 464 A.2d 18 (1983). We conclude, therefore, that the statute of limitations, if tolled at all due to a continuing course of conduct on the part of the defendant, remained tolled only until the decedent was diagnosed in December, 1982, as having cancer of the prostate. Since suit was brought more than three years from that date, it was barred under § 52-584.

There is no error.

In this opinion the other justices concurred.