[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT (#108)
I. FACTS
The plaintiff, Essex Savings Bank ("Essex"), filed a one count complaint on August 15, 1991, seeking a declaratory judgment in regard to an option contract for the sale of real estate between it and the defendant, Matthews Group Inc. ("Matthews")
The underlying factual background is essentially undisputed. Matthews owned property known as the Boxwood condominiums in Old Lyme, Connecticut. In December of 1986, Matthews mortgaged that property to Essex. Matthews subsequently defaulted on the payment of the note, and Essex instituted CT Page 4237 an action to foreclose the mortgage. Prior to the entry of a judgment of strict foreclosure, the parties entered into negotiations for the repurchase of the Boxwood property by Matthews. The result of those negotiations is the option agreement which is the subject of this action. Dated April 30, 1990, the agreement provides that for a period of six months following the recording of the certificate of foreclosure in the Old Lyme land records, Matthews would have the exclusive right to purchase the Boxwood property from Essex. The agreement also contains a purchase price and an agreement by Essex to finance Matthews' repurchase of the property. Paragraph five of the agreement, which concerns the financing of the transaction, states in its entirety that
 In the event Matthews exercises the Option, Essex agrees to extend mortgage loan financing to Matthews in the full amount of the Purchase Price at the interest rate equal to 3/4% above the then residential rate for a term of 30 years and on other terms and conditions normally extended by Essex in loans of this type.
The certificate of foreclosure was recorded on August 30, 1990, causing the option period to end on March 1, 1991. On February 23, 1991, Matthews notified Essex of its intent to exercise the option to purchase the property. Essex responded by sending Matthews a loan application. Matthews refused to fill out the application, claiming that the agreement essentially preapproved it for financing. Essex argued that application and approval for financing were just the type of "other terms and conditions" contemplated by paragraph five of the option agreement. Due to this dispute, the transaction has not been consummated.
Matthews filed an answer and counterclaim on September 18, 1991. Essex filed an answer to the counterclaim and two special defenses on September 26, 1991. On November 6, 1991, Matthews filed a reply to Essex' special defenses.
Essex filed this motion for summary judgment on December 12, 1991. The motion is accompanied by a supporting memorandum and an affidavit of Essex' president, Douglas H. Olson. Essex moves for summary judgment on the ground that under the "other terms and conditions" clause of paragraph five of the option contract, Essex may require Matthews to fill out a loan application and may review that CT Page 4238 application in order to determine whether or not to extend financing to Matthews. In the alternative, Essex, moves on the grounds that the contract is void and unenforceable as it violates General Statutes Sec. 52-550 (the statute of frauds), or that the agreement is void for lack of consideration.
Matthews has filed a memorandum in opposition to the motion for summary judgment, as well as an affidavit of its president and sole shareholder, Janet Boden.
II. DISCUSSION
"Practice Book Sec. 384 provides that summary judgment `shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law'. . . `A "material" fact has been defined adequately and simply as a fact which will make a difference in the result of the case.'" Hammer v. Lumberman's Mutual Casualty Co.,214 Conn. 573, 578, 573 A.2d 699 (1990). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connell v. Colwell, 214 Conn. 242, 246-7, 571 A.2d 116
(1990).
Essex' first argument is that it may require Matthews to apply and be approved for the loan called for in paragraph five of the option contract, under the "other terms and conditions" clause of that paragraph. "The cardinal rule in construing contracts is to ascertain the intention of the parties . . .' Such a determination of what the parties intended is normally a question of fact."' A. Dubreuil Sons, Inc. v. Lisbon, 215 Conn. 604, 610,577 A.2d 709 (1990) (citations omitted). The issue involved here is the meaning that the parties intended to give to the words "other terms and conditions normally extended by Essex in loans of this type." Essex cites various banking statutes and court decisions to show that its position is "prudent", but these items have no bearing on the intended meaning of the disputed language. Furthermore, Janet Boden, the president of Matthews, states in her affidavit that her understanding of the language at issue was that "at the closing involving Matthews' repurchase of Boxwood, Matthews would execute Essex' standard form mortgage and note, containing the usual terms and conditions in such instruments, in exchange for the deed to Boxwood." Accordingly, it is decided that a genuine issue of material fact exists regarding the meaning of the disputed contract language and, accordingly, summary judgment should not be granted on that CT Page 4239 ground.
The plaintiff next argues that the option contract is void and unenforceable under the Connecticut statute of frauds, which provides, inter alia, that
 No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . .
General Statutes Sec. 52-550 (a). In interpreting General Statutes Sec. 52-550, the courts have held that
 To comply with the statute of frauds "an agreement must state the contract with such certainty that its essentials can be known from the memorandum itself, without the aid of parol proof, or from a reference contained therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." (citations omitted)
Breen v. Phelps, 186 Conn. 86, 92, 439 A.2d 1066 (1982)
Essex argues that the agreement is incomplete because the purchase price, detailed in paragraph four, is an uncertain amount. According to paragraph four of the option agreement, the price is to be the aggregate of various outstanding note balances, costs and expenses. Essex characterizes these amounts as "estimates or approximations", which are too indefinite to sustain the validity of the agreement.
The purchase price is comprised of items such as the principal balances of two prior existing promissory notes executed by Matthews in favor of Essex, the cost of any repairs made to the property by Essex, the amount of any taxes or common charges paid by Essex, the amount of tenant security deposit returns made by Essex, and reasonable closing costs. Subtracted from this amount would be the amount of rents received by Essex or proceeds collected by CT Page 4240 Essex due to the sale of condominium units during the option period. It is evident that the price Matthews would have to pay to repurchase the property is dependent upon various items of fluctuating amounts. These amounts would be easily calculable on a given day, especially by Essex, who is the holder of the promissory notes at issue and the owner of the subject property. "[I]t is sufficient if the memorandum, with reasonable certainty, furnishes reliable evidence that the parties have come to a complete agreement." Lynch v. Davis, 181 Conn. 434, 439, 435 A.2d 977 (1980). It is decided that the option contract does furnish such reliable evidence on the issue of the purchase price. Therefore, it is found that the agreement does not violate the statute of frauds.
The final argument advanced by Essex is that the agreement is void for lack of consideration. "Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." State National Bank v. Dick, 164 Conn. 523, 529,325 A.2d 235 (1973).
The preamble to the contract states that the agreement is being entered into "[i]n consideration of the Background which is incorporated herein and the mutual covenants and agreements contained herein." Essex argues that this statement does not recite any type of good and valuable consideration given by Matthews in exchange for the option to repurchase the property, since the "Background" subject property, and the agreement contains no covenants by Matthews which would constitute a detriment to it. "A recitation of consideration received does not prevent proof that there was no such consideration . . . It is simply prima facie evidence, shifting the burden of proof to the party disputing the consideration. TIE Communications, Inc. v. Kopp, 218 Conn. 281, 292, 589 A.2d 329 (1991).
Essex has presented no evidence to rebut the prima facie showing of consideration contained in the agreement, as the only item of evidence submitted, the affidavit of its president, contains no reference to consideration or a lack thereof. Therefore, it is found that there is a genuine issue of material fact as to whether the agreement is void for lack of consideration.
III. CONCLUSION
For the reasons herein contained, it is concluded that the plaintiff's motion for summary judgment ought to be and is hereby denied. CT Page 4241
It is so ordered.
ARENA, J.