[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The plaintiff seeks to recover under an insurance policy which insured the life of William Buenaventura and named his wife, Carolyn Buenaventura and their two children, Elizabeth and Justine, as beneficiaries. The defendant, The Savings Bank Life Insurance Company (SBLIC) has moved for summary judgment on the grounds that it has no liability under the insurance policy as a matter of law because the insured: (1) knowlingly made material false representations concerning his health, medical history and treatment, upon which representations defendant relied in issuing the life insurance; and (2) the insured knowingly concealed material facts from SBLIC concerning his health, medical history and treatment, of which SBLIC was unaware when the certificate of insurance was issued.
In support of its Motion, SBLIC has presented the affidavits of various physicians who treated the insured. The pertinent records of the physician-affiant are attached to the affidavits. In each affidavit the physician-affiant states that the attached records were made in the regular course of his or her business and that it was his or her business practice to make records at or near the time of the patient's visit, examination and/or diagnosis.
The plaintiff has presented no affidavits in opposition to the Motion for Summary Judgment. She has claimed that the medical records relied upon by the defendant cannot be CT Page 173 considered by the Court in ruling on this Motion because they contain inadmissible hearsay, statements, most of which consist of statements made by the insured to the physician in connection with obtaining medical treatment.
Affidavits supporting or opposing summary judgment must set forth such facts as would be admissible in evidence. Brookfield v. Candlewood Shores Estates, Inc., 201 Conn. 1, 9,509 A.2d 489 (1986); Orenstein v. Old Buckingham Corporation,205 Conn. 572, 574, 534 A.2d 1172 (1987); Practice Book 381.
The records of the physicians appended to their affidavits in this case would be admissible under 52-180 of the Connecticut General Statutes as business records. The statements of the insured in those records would be admissible at trial under several exceptions to the hearsay rule. Statements made to a physician who is consulted for advice or treatment are admissible. This rule applies to all statements of pain or suffering made to the physician by the patients, past or present. Brown v. Blauvelt, 152 Conn. 272, 274,205 A.2d 773 (1964). "This includes complaints that are narrations of past sufferings, statements that are answers to questions, and statements that are purely descriptive of present suffering." See Martin v. Sherwood, 74 Conn. 475,482, 51 A. 526 (1902). Handbook of Connecticut Evidence, Second Edition, Colin C. Tait, 11.12.3, p. 377.
The statements of the insured made to the various physicians would also be admissible at trial under Connecticut General Statute 52-172, which creates an exception to the hearsay rule for statements of a deceased person in an action by a beneficiary to recover payment on a life insurance policy for the deceased.
In support of its Motion for Summary Judgment the defendant has presented the following evidence which is uncontroverted by the plaintiff. William Buenaventura was the named insured under a group life insurance plan provided by SBLIC. On August 22, 1986 he executed an application for insurance on which he indicated that he was a 36-year old white male with a completely unremarkable health history. The insurance policy was "non-medical which means that the insuring certificate could be issued without a physical examination of the insured. In lieu of such an examination, SBLIC issued the certificate in reliance on answers provided CT Page 174 by the applicant concerning his health and medical background.
As part of the application process Mr. Buenaventura was asked several questions including the following:
Question No. 3
 Within the past five years, have you been confined in any hospital for any illness or injury, seen a doctor for any treatment, special test or consultation for any reason or do you presently have any impairment or illness of any kind?
The insured responded negatively in writing to this and all other questions and stated that his answers were "true and complete to the best of [his] knowledge and belief." In reliance on Mr. Buenaventura's negative responses to the application questions, SBLIC issued the requested certificate which became effective under certificate number 3246 on October 1, 1986. Mr. Beunaventura died less than two years after applying for insurance on March 1, 1988.
SBLIC has a policy of investigating deaths that occur within two years of the issuance of life insurance in accordance with a two-year period of contestability set forth in the insuring agreement and requests names of doctors and written authorization from the beneficiary for permission to obtain copies of medical records of the deceased insured. SBLIC investigated the death claim for Mr. Buenaventura because he died on March 1, 1988 which was within two years of the date the life insurance became effective on October 1, 1986. SBLI requested information from doctors the insured had seen within the months prior to his application for life insurance.
On his application for life insurance dated August 22, 1986, Mr. Buenaventura denied both having seen a doctor for any illness and being tested within the five years preceding his application. Medical information obtained under authorization by the insured's wife shows that this was a misrepresentation of fact by Mr. Buenaventura. Medical records reveal the following examinations which were not disclosed on the application for insurance: (1) April 30, 1986 at the offices of Drs. Bebout, Wachtel, Pace Anesta in Del Rey Beach, Florida; (2) June 27, 1986 at the office of Dr. CT Page 175 Carlos Martinez in Hollywood, Florida; and (3) July 28, 1986 again by Dr. Martinez. Additionally, on July 28, 1986, tests were run on Mr. Buenaventura's blood and forwarded to Dr. Martinez's office. Thus, contrary to the negative application answers, Mr. Buenaventura had consulted with at least two doctors on three separate occasions in the immediate four months before he applied for life insurance from SBLIC with the possibility of two additional doctors who were referred to without being named.
At his April 30, 1986 visits to the offices of Drs. Bebout, Wachtel, Pace Anesta, Dr. Anesta diagnosed Mr. Buenaventura as having chronic dependent pedal edema. The doctor's final recommendation was that Mr. Buenaventura rule out cardiac disease, liver disease and kidney disease with his doctor on his return home. Dr. Anesta noted that Mr. Buenaventura saw at least one physician in addition to Dr. Anesta and Dr. Martinez in the months before his insurance application. Dr. Anesta recorded in his notes "workup negative up north . . . records from Vascalab (seen two days ago) indicated chronic venous insufficiency." Therefore, it appears Mr. Buenaventura had seen a doctor "up north" and been tested at Vascalab as well as seeing the doctors identified in Florida.
Medical records from the June 27, 1986 visit to Dr. Martinez show that within two months prior to applying for insurance Mr. Beunaventura was suffering from: (1) swelling in the ankles; (2) painful extremities; (3) "purple spots" on the skin; and (4) liver dysfunction. Dr. Martinez's diagnosis noted a concern that the patient might have acquired immune deficiency syndrome (AIDS) and recommended specifically that the patient "rule out AIDS." On July 28, 1986, Dr. Martinez examined Mr. Buenaventura again sending him for blood tests. The laboratory report dated July 29, 1986, indicates significant abnormalities in the blood with elevated liver function and exceedingly low levels of red blood cells, hemoglobin and hematocrit.
Medical histories taken shortly after August 22, 1986 refer to medical examinations and treatment prior to the application which were not disclosed. Mr. Buenaventura informed Dr. Knoll on August 25, 1986, just three days after applying to SBLIC for insurance, that he had been seen by a cardiologist and a vascular surgeon and internist in Florida. CT Page 176 On September 3, 1986, in a medical history taken by Dr. Davis, Mr. Buenaventura reported seeing a doctor in March 1986 who prescribed Dyazide and Prednisone in response to leg swelling and pain. Mr. Buenaventura reported that the medication had relieved his symptoms. The March 1986 doctor referred to is clearly not Dr. Anesta or Dr. Martinez based on their records and affidavits. Rather, the reference to seeing a doctor in March 1986 adds to the likelihood that there was at least one additional doctor not disclosed, who remains unidentified, when Mr. Buenaventura applied for life insurance.
In a medical examination dated September 8, 1986, Dr. Robert Lyons recorded that Mr. Buenaventura had reported his feet swelling in January 1986 and that "discrete lesions were noted about two months ago." Medical records also show that Mr. Buenaventura had a history of homosexuality and was tested in Connecticut for AIDS by Dr. Rolf Knoll on August 25, 1986. By August 29, 1986, one week after responding negatively to all questions relating to his health on the insurance application, Mr. Buenaventura tested positive for HTLV III and Kaposi's sarcoma. The insured died on March 1, 1988, within two years of applying for life insurance, of an Aids-related illness. Specifically, the cause of death was listed as respiratory failure by Dr. Hymes, Mr. Buenaventura's attending physician since September 17, 1986. Dr. Hymes also noted Mr. Buenaventura had been treated for Kaposi's sarcoma.
On his application for life insurance, Mr. Buenaventura concealed all evidence of any medical examination, treatment or tests by any doctor or laboratory "up north" or in Florida despite specific inquiry by SBLIC about treatments, consultations and tests. Mr. Buenaventura's concealment of this information on his application for life insurance prohibited SBLIC from accurately evaluating his insurability because SBLIC had no reason to inquire further in light of Mr. Buenaventura's representation that he was in good health.
Regardless of the ultimate cause of death and whether Mr. Buenaventura knew he had AIDS when he applied for life insurance, there is no question that in the four months preceding his application, Mr. Buenaventura saw doctors on at least three different occasions which he did not disclose. The diagnoses prior to the application indicated chronic and life threatening illnesses (chronic venous insufficiency and CT Page 177 chronic dependent pedal edema), yet Mr. Buenaventura denied having seen a doctor for any reason or receiving any treatments or tests within the five years preceding August 22, 1986. The medical information which was not disclosed represents overwhelming evidence of misrepresentation by Mr. Buenaventura in answering application questions which were a part of the insuring agreement and upon which SBLIC relied in issuing the insurance certificate.
Death within two years of the issuance of a certificate falls into the period of contestability under the insuring agreement. SBLIC has rejected the claim on the policy and has exercised its right to contest coverage.
In Connecticut a material misrepresentation knowingly made by the insured and relied upon by the insurer invalidates the insurance policy without further proof of actual conscious design to defraud. State Bank Trust Co. v. Connecticut General Life Ins. Co., 109 Conn. 67, 72,145 A. 565 (1929). A misrepresentation is material when it is included in an answer to a question contained in the application which is made part of the policy. Id. at 70. In a policy of life insurance, questions appearing on the application concerning the applicant's health care characterized as "special inquiries" and are conclusively deemed to be material. Id. at 71.
William Buenaventura's response to the special inquiries on the application concerning his health formed the basis for calculating the risk involved and SBLIC relied on those responses when issuing the certificate of life insurance. Therefore, the representations of the insured were material, and upon being found untrue, they "invalidate the policy without further proof of actual conscious design to defraud." Guariglia v. John Hancock Mutual Life Ins. Co.,139 Conn. 54, 57, 90 A.2d 162 (1952).
It appears clear from the uncontested facts submitted by the defendant that William Buenaventura knew that he had consulted with several physician for treatment and testing with respect to serious medical problems within a four month period prior to the application of insurance. Thus, when he responded in the negative to a special inquiry on the application which asked whether he had seen a doctor for treatment, special test or consultation within the last five CT Page 178 years or whether he had any illness of any kind, he made a material misrepresentation which was sufficient to invalidate the insurance policy under Guariglia v. John Hancock Mutual Life Ins. Co., supra and State Bank Trust Co. v. Connecticut General Life Ins. Co., supra.
It is incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined that a genuine issue of material fact exists. Connell v. Colwell, 214 Conn. 242, 251, 571 A.2d 116 (1990). The plaintiff has failed to offer any facts to oppose those submitted by the defendant regarding William Buenaventura's knowledge and concealment of his medical history in completing the life insurance application in question. The court finds that there is no genuine issue of material fact.
Summary judgment is hereby entered in favor of the defendant.
By the Court Aurigemma, J.