[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'SMOTION FOR SUMMARY JUDGMENT
The plaintiff, Phyllis Thoennes, commenced the present action against the defendant, Joseph C. Wu, M.D., on May 4, 1990, by service of a one-count complaint sounding in medical malpractice, alleging that "from on or about January 29, 1986 and continuously until May 12, 1988," the defendant cared for, treated and supervised the plaintiff for a dislocation and fracture of her right ankle and foot. The plaintiff also alleges that, as a result of the defendant's negligence, carelessness, and failure to exercise proper orthopedic care while treating her, she suffered permanent injuries. Specifically, the plaintiff alleges that the defendant failed to properly repair, reduce, align, or timely perform surgery on the dislocation and fracture. The plaintiff further alleges that the defendant failed to consult with other specialists, and permitted the dislocation and fracture to improperly heal.
The defendant filed an answer denying the material allegations of the complaint, and alleging by way of special defense that the plaintiff's cause of action is barred by the statute of limitations and repose, General Statutes § 52-584, and the plaintiff has denied the allegations of the special defense.
Before the court at this time is a motion for summary judgment CT Page 6353 filed by the defendant, alleging that the plaintiff did not commence the present action, as required by General Statutes § 52-584, within two years from the date when the injury was first sustained or discovered or in the exercise of reasonable care should have been discovered, or within three years from the date of the act or omission complained of. Each party has filed an appropriate memorandum of law and excerpts of certain deposition testimony.
Practice Book § 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Suarez v. Dickmont Plastics Corp. , 229 Conn. 99,105, ___ A.2d ___ (1994). In deciding such a motion, the court must view the evidence in the light most favorable to the nonmoving party. Connecticut Bank Trust Co. v. Carriage Lane Associate,219 Conn. 772, 780-81, 595 A.2d 334 (1991). The test to be applied by the court is whether, on the same facts, a party would be entitled to a directed verdict. Gabrielle v. Hospital of St.Raphael, 33 Conn. App. 378, 382-83, 635 A.2d 1232, cert. denied,228 Conn. 928, ___ A.2d ___ (1994). The "party seeking summary judgment has the burden of showing the nonexistence of any material fact." (Citation omitted; internal quotation marks omitted.)Connecticut Bank Trust Co. v. Carriage Lane Associates, supra. A material fact is one that will make a difference in the result of a case. Hammer v. Lumbermen's Mutual Casualty Co., 214 Conn. 573,578, 573 A.2d 699 (1990). "[T]he party opposing [summary judgment] must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Suarez v. Dickmont PlasticsCorps., supra. A party's motion for summary judgment is "properly granted if it raises at least one legally sufficient defense that would bar the [opposing party's] claim and involves no triable issue of fact." Perille v. Raybestos-Manhattan-Europe, Inc.,196 Conn. 529, 543, 494, A.2d 555 (1985).
The defendant argues, in its memorandum of law in support of its motion for summary judgment, that the plaintiff first consulted the defendant on January 29, 1986, when the fracture of the plaintiff's ankle was diagnosed, and last consulted the defendant on May 12, 1988, when the defendant injected a cortisone shot into the plaintiff's right ankle. The defendant argues that the plaintiff commenced this action in May of 1990, but that she knew of significant problems in her right ankle in March of 1988, and in April of 1988 was advised to have "fusion surgery" on her ankle. CT Page 6354 The defendant offers the opinion of the plaintiff's expert witness, Dr. John Bruno, to support his argument that the alleged injury to the plaintiff's ankle was complete by March 31, 1988, and injury may have been present by March, 1986. It is therefore the defendant's contention that if an act of malpractice occurred, which the defendant denies, then it occurred no later than March 31, 1988. The defendant further argues that the plaintiff, through her deposition testimony, admits that the care rendered by the defendant on May 12, 1988 did not result in her alleged injury, and that she does not claim that her alleged injury resulted from the treatment she received from the defendant on May 12, 1988 or later.
The defendant also refutes the plaintiff's argument that the May 12, 1988 treatment was part of a continuous course of treatment, because Dr. John Bruno opines that the feasibility of performing surgery to treat the plaintiff disappeared prior to March 31, 1988. The defendant therefore argues that the injury to the plaintiff was complete prior to March 31, 1988. The defendant also argues that no continuing care subsequent to April 30, 1986, the latest date surgery could have been performed, resulted in the plaintiff's injury. Therefore, the defendant claims that since the plaintiff's action was not commenced until May 4, 1990, more than four years from the date of the alleged negligent act, the statute of limitations and repose has expired.
It is the plaintiff's position that the defendant continuously treated the plaintiff until May 12, 1988, that the statute of limitations began to run on that date, and that since the complaint was served on May 4, 1990, the action was commenced within the statute of limitations. The plaintiff argues that the doctrine of "continuing course of treatment" holds that the statute begins to run when the treatment is terminated, not when the injury occurs. The plaintiff argues that summary judgment should be denied because there are issues of material fact in this case regarding actions taken by the defendant.
The statute of limitations and repose is found in General Statutes § 52-584, and provides in part that:
 "[n]o action to recover damages for injury to the person. . ., caused . . . by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanitorium, shall be brought but within two years from the date when the injury is first sustained or CT Page 6355 discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."
General Statutes § 52-584.
The two-year limitation portion of General Statutes § 52-584
begins to run when the plaintiff "discovers some form of actionable harm, not the fullest manifestation thereof." (Emphasis in the original.) Lambert v. Stovell, 205 Conn. 1, 6, 529 A.2d 710
(1987). See also Champagne v. Raybestos-Manhattan, Inc., 212 Conn. 509,521, 562 A.2d 1100 (1989). The "necessary ingredients for `actionable harm'" are a "a breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff." Catz v. Rubenstein, 201 Conn. 39,44, 513 A.2d 98 (1986). Therefore, "the statute of limitations begins to run when the claimant has knowledge of facts which would put a reasonable person on notice of the nature and extent of injury and that the injury was caused by the wrongful conduct of another." Catz v. Rubenstein, supra, 47.
The repose portion of General Statutes § 52-584, which provides that "no action be brought more than three years from the date of the act or omission," refers to "the date when the negligent conduct of the defendant occurs and not the date when the plaintiff first sustains the damages." Copeland v. Radiology Associates,Inc., Superior Court, Judicial District of Middlesex, Docket No. 63525, (January 21, 1993, Higgins, J.). Thus "the repose portion of § 52-584 . . . bars the bringing of suit more than three years after the alleged negligent conduct of a defendant regardless of when a plaintiff discovers the proximate cause of his harm or any other essential element of a negligence cause of action." Catz v.Rubenstein, supra, 49-50. See also Stein v. Katz, 213 Conn. 282,285, 567 A.2d 1183 (1989); McDonald v. Haynes Medical Laboratory,Inc., 192 Conn. 327, 471 A.2d 646 (1984).
The "continuous course of treatment doctrine" and the "continuing course of conduct doctrine" act to toll the statute of limitations, and are doctrines "well established in the jurisprudence of this state." Blanchette v. Barrett, 229 Conn. 256,274, ___ A.2d ___ (1994). While the continuing course of treatment and the continuing course of conduct doctrines are "analytically separate and distinct, their relevance to any CT Page 6356 particular set of circumstances . . . may overlap. " Blanchette v.Barrett, supra, 276. "[T]he doctrines have considerable similarity . . . [and], both doctrines are conspicuously fact-bound." Id.
The court recently reaffirmed the existence of the continuous treatment doctrine in Connell v. Colwell, 214 Conn. 242,571 A.2d 116 (1990), and Blanchette v. Barrett, supra.
 "The term malpractice itself maybe applied to a single act of a physician or surgeon or, again, to a course of treatment. The Statute of Limitations begins to run when the breach of duty occurs. When the injury is complete at the time of the act, the statutory period commences to run at that time. When, however, the injurious consequences arise from a course of treatment, the statute does not begin to run until the treatment is terminated . . . ."
(Internal citations omitted; internal quotations omitted.) Connellv. Colwell, 214 Conn. 242, 253, 571 A.2d 116 (1990).
 "It may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury during a course of treatment. Alternatively, the negligence may have consisted of a series of acts or omissions. Thus, it is appropriate to allow the course of treatment to terminate before allowing the repose section of the statute of limitations to run, rather than having the parties speculate and quarrel over the date on which the act or omission occurred that caused the injury during a course of treatment."
(Emphasis in the original; citations omitted) Blanchette v.Barrett, supra, 277.
"As an alternative [to the continuous treatment doctrine], the continuing course of conduct doctrine has also been applied to toll the statute of limitations." Blanchette v. Barrett, supra, 275. The continuing course of conduct doctrine "requires that three requirements be met: (1) an ongoing physician-patient relationship, (2) negligence by the defendant, and (3) some form of conduct that CT Page 6357 continued beyond the initial treatment." Starkweather v. Patel,34 Conn. App. 395, 401, ___ A.2d ___ (1994), citing Blanchette v.Barrett, supra. The continuing course of conduct doctrine also requires "there be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto [and] [t]hat duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong . . . ."Blanchette v. Barrett, supra, 275.
When a duty continues to exist "after the cessation of the `act or omission' relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal citations omitted.)Blanchette v. Barrett, supra, 275. "[W]hether the physician-patient relationship has terminated depends upon several factors."Blanchette v. Barrett, supra, 278.
 "These factors include the subjective views of the parties as to whether their relationship had terminated; the length of their relationship; the frequency of their interactions; the nature of the physician's practice; whether the physician had prescribed a course of treatment for or was monitoring the condition of the patient; whether the patient was relying upon the opinion and advice of the physician with regard to a particular injury, illness or medical condition; and whether the patient had begun to consult with another physician concerning the same injury, illness or medical condition."
(Citations omitted.) Blanchette v. Barrett, supra, 278.
In connection with when the two-year statute of limitations began to run, the defendant relies on the expert's testimony and argues that the period began at least by March 31, 1988, the latest date in which the plaintiff could have had surgery performed on her ankle, and that the period ended two years later, before May 4, 1990, the date the action was commenced. The plaintiff claims that from 1986 until 1988, the defendant failed to inform her that she had an "un-united fracture," and failed to perform the surgery necessary to meet the required standard of care. In doing so, the plaintiff argues that her injury occurred throughout a continuous CT Page 6358 course of treatment with the defendant. Therefore the plaintiff argues that the limitation period runs from, May 12, 1988, the date of the plaintiff's last visit with the defendant, until May 12, 1990, two years after the alleged negligence, and since suit was started on May 4, 1990, the action was brought within the two-year period.
The two-year statute of limitations begins to run when a party suffers an actionable harm. See Catz v. Rubenstein, supra, 44. Viewing the evidence in the light most favorable to the plaintiff, there exists a genuine issue of material fact with regard to the defendant's claim that the two year statute of limitations had started to run more than two years prior to May 4, 1990. There remain genuine issues of material fact as to when the plaintiff was aware of facts which would have put her on notice of "the nature and extent of an injury and that the injury was caused by the wrongful conduct of another." Catz v. Rubenstein, supra, 49.
In connection with when the three-year statute of repose began to run, again the defendant claims that the period began when the alleged negligence occurred which was more than three years prior to the institution of suit. The plaintiff claims that the repose period ran from May 12, 1988 until May 12, 1991, within three years of the date of the action being commenced.
While the defendant agrees that May 12, 1988 was the last date that the plaintiff and the defendant had an office visit, the defendant disputes that May 12, 1988 triggers the statute of repose. Instead, the defendant argues that the visit on May 12, 1988 was for the injection of a cortisone shot only, which was not the source of the plaintiff's injury, and therefore not a part of a continuous course of treatment.
The three-year statute of repose begins to run when the alleged negligent conduct of the defendant occurs. See Catz v.Rubenstein, supra, § 49-50. There exists an exception when the doctrines of continuous course of treatment and continuing course of conduct apply to toll the statute. See Copeland v. RadiologyAssociates, Inc., Superior Court, Judicial District of Middlesex, Docket No. 635525 (January 21, 1993, Higgins, J.).
Both the doctrine of continuous course of treatment and the doctrine of continuing course of conduct are "conspicuously fact-bound;"Blanchette v. Barrett, supra, 276; and require that genuine issues of material fact be determined, with respect to when CT Page 6359 the negligence occurred, when the plaintiff had knowledge of actionable harm and when the physician-patient relationship terminated. These facts are relevant with respect to both the two-year and three-year statutes. Such facts must be resolved by the trier of fact, and are not properly determined on a motion for summary judgment. Accordingly, the motion for summary judgment is denied.
William L. Hadden, Jr., Judge