[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JANUARY 20, 1995
This action arises out of a motor vehicle accident which occurred in the early morning hours of January 18, 1980, on Interstate 84 in East Hartford, Connecticut. The plaintiff, Jayne A. Kennedy, is the administratrix of the Estate of Marla J. Nicoll, the decedent, who was killed when her vehicle collided with a trailer that was parked on the right side CT Page 1024 shoulder of Interstate 84. On April 16, 1992, the plaintiff began this product liability action against defendant Oshkosh Trucking Corporation dba Oshkosh Trailers ("Oshkosh") and defendant Miller Trailers, Inc. ("Miller"). The plaintiff brings this action against the defendants alleging that the defendants, their agents, servants employees and/or representatives, designed, produced, manufactured, and sold the large trailer which was involved in the accident on January 18, 1980.
Before December 10, 1990, Miller was a Florida corporation with its principal place of business in Bradenton, Florida. Oshkosh is, and at all times relevant herein was, a Wisconsin corporation with its principal place of business in Oshkosh, Wisconsin. Miller manufactured the trailer in question in 1979 and sold the same long before December 10, 1990.
On November 13, 1990, Oshkosh and Miller executed an Asset Purchase Agreement (the "Agreement") whereby Oshkosh on December 10, 1990 agreed to purchase substantially all of Miller's assets. Pursuant to the Agreement, Oshkosh paid $14,889,000 in cash to Miller for its assets. Certain assets of Miller, however, were specifically excluded from the Agreement. The excluded assets were as follows: the consideration given for the asset purchase, Miller's franchise to be a corporation; its articles of incorporation, corporate seal, stock books, minute books and other corporate records; Miller's income tax and franchise returns, and rights to refunds; intercompany accounts receivable in amount not exceeding roughly $5,900,000; any tort claims not reduced to judgment; and any refunds for insurance policies issued to Miller.
In the Agreement, Oshkosh expressly did not assume liability for personal injuries and product liability claims involving products designed and sold by Miller prior to the asset purchase date of December 10, 1990. The Agreement, at Article 2, section 2.01 entitled Excluded Liabilities at part (c), states that Oshkosh will not assume any:
(c) Liability or obligations [of Miller] for claims made CT Page 1025 for injury to person or damage to property, whether made in product liability, tort, breach of warranty or otherwise, arising out of or in any way relating to or resulting from any product sold by it [Miller] prior to the closing date.
On August 26, 1994, the defendant Oshkosh moved for summary judgment as to all of the plaintiff's product liability claims as contained in the plaintiff's complaint dated April 7, 1992.
The party seeking summary judgment "has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." Suarez v. Dickmont PlasticCorp., 229 Conn. 99, 105, 639 A.2d 507 (1994). "[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal citations omitted.) Water Way Propertiesv. Colt's Mfg. Co., supra, 230 Conn. 664. "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal citations omitted.) Id., 665.
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Scrapchansky v.Plainfield, 226 Conn. 446, 450, 627 A.2d 1329 (1993). The test for the granting of a summary judgment motion is "whether a party would be entitled to a directed verdict on the same facts." Connell v. Colwell,214 Conn. 242, 247, 571 A.2d 116 (1980).
The general rule in most jurisdictions is that "a corporation which purchases all the assets of another company does not become liable for the debts and liabilities of its predecessor. . ." Ricciardello v. J.W.Gant Co., 717 F. Sup. 56, 57-58 (D.Conn. 1989); CT Page 1026 see also Copperthite v. Pytlik, Superior Court, Judicial District of Middlesex, Docket No. 50953, (August, 29, 1992) (Arena, J.). Despite this general rule or a successor corporation's signed refusal to assume the liability of its predecessor, there are, nonetheless, four well-established exceptions to the general rule of nonliability:
 (1) the purchase agreement expressly or impliedly so provides;
 (2) there was a merger or consolidation of the two firms;
 (3) the purchaser is a "mere continuation" of the seller; or
 (4) the transaction is entered into fraudulently for the purpose of escaping liability.
Ricciardello v. J.W. Gant Co., supra, 58; Copperthitev. Pytlik, supra.
A fifth exception to the above rule, the product line exception, has been recognized by a small number of states, and, in particular, by a few Connecticut Superior Courts. In Connecticut, the product line exception is generally stated to assess liability "[w]here the successor [corporation] may hold itself out as being the same by name of product, operation and sale, thereby receiving the benefit of past goodwill, it should likewise bear the burden of past operation." Copperthite v.Pytlik, supra, quoting Fletcher v. Doughboy Recreational.Inc., 7 Conn. Law. Trib. No. 6, p. 16 (Super.Ct., October 20, 1980) (Corrigan, J.). See Ray v. Alad,19 Cal.3d 22. 560 P.2d 3, 136 Cal.Rptr. 574 (1979) (One of first cases to hold successor corporation liable for product liability claim in which one of the court's justification for imposing liability upon a successor to a manufacturer rested on the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business). See also Santa Maria v. Owens-Illinois. Inc., 808 F.2d 848
(1st Cir. 1986).
Application of the product line exception requires CT Page 1027 the following three factors to be met:
 (1) the transferee must acquire substantially all of the transferor's assets, leaving no more than a corporate shell remaining; (2) the transferee must hold itself out to the public as a continuation of the transferor, and must do so by producing the same product line under a similar name; and (3) the transferee must benefit from the good will of the transferor.
Copperthite v. Pytlik, supra.
In Copperthite, the plaintiff brought a products liability action against Peterson Oil, the successor corporation of the manufacturer and installer of a defective home furnace. Id. The defendant Peterson Oil bought substantially all of the assets of Higganum Oil Company. Id. The defendant Peterson Oil moved for summary judgment and the plaintiff argued in opposition that the court should apply the product line exception. Id. In denying the motion for summary judgment the court found that questions of fact existed as to whether Peterson Oil held itself out to be a continuation of Higganum Oil and whether Peterson Oil benefited from the goodwill of Higganum Oil. Id.
The defendant, in its memorandum in support of its motion for summary judgment makes a number of arguments as to why the product line exception is not applicable in the present matter. The defendant attempts to remind this court that both the Copperthite
and Fletcher cases were Superior Court decisions and therefore are not binding on this court. Additionally, the defendant urges the court to adopt the majority view by rejecting the product line exception. The defendant also argues in a conclusory fashion that theCopperthite case is "easily distinguishable on its facts" from the present case.
The defendant further argues that the three product line requirements are not satisfied in the present case. The defendant asserts that Oshkosh did not acquire all of Miller's total assets; that Oshkosh did CT Page 1028 not hold itself out to the public as a continuation of Miller; and that Oshkosh has not produced a product line under a similar name. The defendant argues that there are no genuine issues of material fact in dispute and as a matter of law summary judgment should be granted. The defendant concludes its argument of its motion asserting that the general rule of non-liability of a successor corporation should apply in the present case.
The plaintiff argues in her memorandum in opposition that genuine issues of material fact are present in this matter. The plaintiff argues that as to each of the product line exception's three requirements there are issues of fact which are not proper for summary judgment determination.
As to the first requirement of the product line exception, the plaintiff has submitted along with her memorandum in opposition an excerpt of Answers by the Defendant, Miller Trailers to the Plaintiff's First Set of Interrogatories and Requests for Production dated April 15, 1993 [First Set of Interrogatories] in which Miller states that Oshkosh purchased 100% of Miller's total assets pursuant to the Agreement. Additionally, in the First Set of Interrogatories, Miller stated that after the Agreement date of December 10, 1990, Miller ceased to exist as a business entity under the Miller name or any other name.
Against this background it is found find that there are genuine issues of material fact whether or not Oshkosh bought substantially all of Miller's assets and whether after the sale Miller was left as no more than a corporate shell.
The second requirement of the product line exception states that the transferee must hold itself out to the public as a continuation of the transferor and must do so by producing the same product line under a similar name. See Copperthite, supra. The plaintiff argues that material facts are in dispute despite the Affidavit of Robert Marino submitted by the defendant in which Marino attests that Oshkosh had no involvement with the trailer in question. The CT Page 1029 plaintiff asserts, by reference to Oshkosh's Supplemental Responses to Interrogatories and Requests for Production dated August 12, 1993, that Oshkosh purchased Miller's physical plant in Florida and began manufacturing trailers at that site. The plaintiff also asserts that Oshkosh has admitted that subsequent to December 10, 1990 it has conducted inspection, maintenance, and repairs of Miller trailers. The plaintiff also asserts that Oshkosh's Responses to Plaintiff's First Set of Interrogatories and Requests for Production, in which Oshkosh admits that it has provided service to Miller trailers when requested to do so by the owners of the trailer, establish a question of material fact as to whether Oshkosh was holding itself out to the public as a continuation of Miller.
Again, genuine issues of material fact exist as to whether or not the second requirement of the product line exception has been satisfied.
The third requirement of the product line exception requires that the transferee benefit from the goodwill of the transferor. The plaintiff in her argument points out that the Agreement at Article 1, section 1.01(d) specifically states that Oshkosh is purchasing Miller's goodwill. The plaintiff also argues that when Oshkosh provides service to trailers made by Miller it receives the benefit of the goodwill of Miller.
The court finds that genuine issues of material fact are in dispute as to whether or not as a matter of law the third requirement has been met.
After a review of the defendant's motion, the memoranda of law in support of and in opposition to the motion, and the affidavits and exhibits attached thereto, the court denies the defendant Oshkosh's motion for summary judgment as to all of the plaintiff's product liability claims as contained in the complaint dated April 7, 1992. CT Page 1030